Case No. 23-3357, Dwan Bray et al. v. Bon Secours Mercy Health, Inc. et al. Argument not to exceed 15 minutes per side. Mr. Flowers, you may proceed for the appellant. Good morning, Your Honors. My name is Paul Flowers. I represent the plaintiff appellants in this case, Dawn and Aaron Bray, who are in the back of the courtroom. I'm joined by our trial counsel, Dan Moore and Miles Polster. I'd like to reserve three minutes for rebuttal first off and just start out by explaining the background of the situation. Ms. Bray was diagnosed with hypertension during her pregnancy in 2015. She was admitted to Mercy Anderson Hospital here in Cincinnati by her OB-GYN, who is Dr. Partridge. Mercy Anderson is a suburban hospital about 15 minutes away from here. Overwhelming majority of patients are fully insured or at least on Medicare. She's seen at the hospital by a person who's called the Mercy Anderson House Hospital Officer, and that's Dr. Thresh. Dr. Thresh sees her this one time. He lists all the symptoms for a preeclampsia. He does not make that diagnosis. She's discharged. Nine days later she returns with worsening symptoms and an increased fetal heart rate. The baby's delivered. Can I ask you a preliminary question since we read the briefs and know the facts? Why not just file a new protective action under the Federal Tort Claims Act? Why won't you do that? It can be a related case. They get merged. You don't have to worry. Everything's fine. We did that. We did that. You did file? Yeah, so there's a second action pending now that was filed in Hamilton County within the deadlines, was removed, and now it's stayed. So that's sitting there. Okay, so there is a Federal Tort Claims Act. Why did you file it in Hamilton County? Why wouldn't you file it in Federal Court? We gave a lot of thought to that, and the thinking was we didn't want to waive our jurisdictional arguments. Sure, but couldn't you tell the district judge we're not waiving, we're just protecting? Yeah, it seemed better to just file the same course. That's fine. I was just curious. It's uncharted territory in a lot of ways. And that was already removed? Correct. And a motion to dismiss was filed lickety-split, so that's sitting there. What's the motion to dismiss based on statute of limitations? Exhaustion. Statute of limitations, if it isn't in there, it's going to come. There's a host of hurdles once you're in Federal Court on these medical malpractice cases, and it is a trap for the unwary. We're here on jurisdiction, on de novo review, and the good news for this court is that the party's briefing, I feel, has really narrowed down the issues here to the jurisdictional question. We're all in agreement that HealthSource, which is Dr. Thrush's employer, pursuant employment agreement, is a covered entity and does receive Federal funds. Part of what's set up there is that they have their own OBGYNs working at their clinics, which are federally funded. But in order to get the salaries up there to where it's enticing for these OBGYNs to join, they do outside work. And that's provided in their employment contract that HealthSource not only covers them for FTCA-type claims, but also provides them with gap insurance for the non-FTC-type claims. So it's fully contemplated that there are going to be times. Can I ask a question related to that? I've been struggling with one part of this. Didn't the district court make a factual finding that Thrush obtained admitting privileges as a condition of his employment with HealthSource? And if so, isn't that enough? Yeah. The judge made that factual finding. It's not supported by the evidence. There's nothing in there that says that Dr. Thrush even applied for or was trying to get or ever had admitting privileges of mercy. He did have to. Oh, wait a minute. But there is. I thought the declaration of the CEO from HealthSource says that. Am I wrong? Yeah. She says hospital privileges. She does not say admitting privileges. I don't think that was an accident. Is there a difference? Yeah. If you go through their bylaws like the defendants are inviting us to do, there are different levels of physicians. And there are different degrees of what they can do at the hospital. He's a hospital. He's on the hospital staff. There's no doubt about that because he's working there. Does he have the right to admit? I would say no. I mean, the professional service agreement specifically says that he can't. If he doesn't have the right to admit and your claim is that he didn't admit, then it seems to me that that gets into affecting the merits of your claim ultimately if we were there. Could be. It could be. I mean, it definitely will apply in the merits. We haven't gotten there yet and it seems like a long way off. But I think it's always best to start with the wording of the statutes and the regulations. And this is where everybody's getting into a problem. So we all now agree that in order for there to be jurisdiction, the defendant has to satisfy Section 6.6 of the PHS regulations. You have to satisfy that. Most of them do not apply, most of the exceptions that apply that allow this, because we do not have a certification from the secretary that this activity is recognized as a federal activity. So everything boils down to Section E-4-2. And this is where the district court sat and this is where the defendants sit. And it's hospital-related activities. And it says, and this is what is federally covered, periodic hospital call or emergency room coverage is required by the hospital as a condition for obtaining hospital-admitting privileges. It doesn't say maintaining hospital privileges. It says obtaining. And what the district court did at the government's invitation is break it down. Hospital privileges, well, he's got to have those. His contract says so. And admitting privileges, well, he must have those then. And that's not how it reads. Doesn't the bylaw say that you get admitting privileges, in effect, consistent with your clinical privilege? Right. So if he has clinical privileges to do OB work, then doesn't that say he has admitting privileges for the same thing? Not necessarily. So that's the bylaws. And what the district court cites is ID pages 749 to 750. 4.3, there's four different types of physicians in the hospital under the bylaws. 4.3 is affiliated staff. That seems to me to be what he is, because he's not an employee of Mercy. He's there as a contractor. Affiliated staff, it says nothing about admitting privileges. It does for the first two, active staff, certainly, but there's no indication he's that. So he does not necessarily have to have admitting privileges, and it makes sense. He's there on inpatient call. The patients he sees are already admitted by their OBGYNs, which was the case here. Dr. Partridge admitted Ms. Bray, not Dr. Thresh. He's just there to see them until the OB can come in or to handle minor situations or whatever is needed at the hospital. So there is no link there. Now, his employment agreement, and they're all sitting on this, his employment agreement says that he has to have admitting privileges, period. The employment agreement has nothing to do with Mercy. He just has to have admitting privileges somewhere. And that makes sense, because if he's working at a health source, federally funded clinic, and there's a problem, and the patient needs a higher level of care, he needs to be able to send that patient to a local hospital. So he has to have admitting privileges somewhere. It would have been very simple for the government to show that he was obtaining admitting privileges at Mercy, but there's no proof of that, no proof of that at all. So they don't get in that door. It's a complete disconnect. So the affiliate staff says, and I'm reading, an affiliate staff member must hold active or associate membership at one or more Mercy health hospitals. So that incorporates active at that point. Why doesn't that incorporate active, which then incorporates admitting privileges? But is it Mercy Anderson? What? Is it Mercy Anderson, one or more Mercy hospitals? So there's different Mercy hospitals. Mercy Anderson is the one we're here about today, which is far from a federally funded hospital. Why wasn't all this cleared up below? I mean, these are facts. Right. You know, we thought it was cleared up. We had the employment agreement. We had the professional services agreement. All seemed very clear. Nothing said anything about him obtaining admitting privileges. And again, I've got to emphasize, it's obtaining admitting privileges. Not that he has them. Not that he's going, he's obtaining them. Well, if he has them, then he obtained them. Well, then it would be maintaining, that he has to do on call to maintain his privileges. You can't have something without obtaining it. Okay. Well, Your Honor, assuming your definition is correct, that obtaining means the same thing as maintaining, if that's correct, we still have no proof of that. We still have no proof that he ever obtained admitting privileges at Mercy Anderson. And that he's on call there because he needs that to maintain. Well, no. Patton's declaration says, Dr. Thress was required as part of his employment contract with a health source to obtain and maintain, so they're both of them, hospital privileges at Mercy Health Anderson Hospital. Right. And she's using hospital privileges. Now, back up a bit. Ms. Patton is deposed. And in her deposition, she's asked, why do we have this agreement? And she says, not that. She says, oh, it's because at Mercy, they don't have a residency program, and so they want OBs to come in and fill in the residency. Do we have her deposition? Yes. Her deposition was filed. Then, when they move to dismiss, you get this declaration several months later. It doesn't say that. I'm sorry. It's okay. If you don't remember, I'll find it. It's quoted in our brief. Okay. Yeah, in rebuttal, I can bring that up. So, yeah. Then, it's in their supplemental briefing, they whip out this declaration, and she says, hospital privileges. We all know it's about admitting privileges. Everybody knows what it's about. But yet, she uses the phrase hospital privileges. So I don't think that means anything at that point. And she certainly can't contradict her deposition. Oh, sure, Your Honor. Could you go back and explain to me the significance, because I just didn't catch it the first time, about the bylaws and Mercy Health Anderson versus the Mercy Hospitals that you were explaining?  I think you quoted it. The language says has to have privileges of one or more Mercy Hospital. Mercy Health Hospital. Mercy Health Hospital. Right. We're only concerned with Mercy Anderson. And again... But it says, which will be considered their primary hospital affiliation. Do we know his primary hospital affiliation? No, we do not. There's nothing in the record saying that. And remember, this is the defendant's burden. We all agree on that, if they're going to justify federal jurisdiction. So, I mean, again, I just have to stress, the regulation says that they are doing on-call to obtain those privileges. If obtain means maintain, we still have no proof of that either, that he had to do on-call in order to have the privileges. He had to have the privileges somewhere, but was he on-call to maintain them? No proof of that. Was he on-call to obtain them? No proof of that. Time's up. Thank you, Your Honor. I ask you to reverse. Mr. Kennedy. May it please the Court. Kevin Kennedy for the government. I just want to take a step back to discuss the statutory framework that sets the scope of a health center's deeming under Section 233. Can you keep your voice up, please? I just want to discuss the statutory framework that sets the scope for a health center's deeming under Section 233. Health centers are deemed with respect to certain services provided. If they provide those services to patients, the deeming applies. If they provide those services to non-patients, the question is whether the secretary has approved the treatment of non-patients in that scenario. And here, the government and the district court both determined that Dr. Thress's treatment of non-patients, such as Ms. Bray, while performing on-call shifts at a local hospital, qualified for coverage under one of the secretary's pre-approved scenarios. Specifically, the secretary has approved treatment for non-patients where a health center doctor obtains admitting privileges through the performance of on-call shifts at a local hospital. And the logic of that scenario is clear in the context of OB-GYN care. The health center can provide certain OB-GYN care, routine checkups, at the health center itself, but much OB-GYN care, for instance, labor and delivery and postpartum care, must occur at a hospital. Hospitals, as Mercy did in this case, require the performance of on-call to obtain admitting privileges. And health center doctors will need to obtain those admitting privileges to provide comprehensive... Okay, so you agree he's affiliate staff, right? I... If you disagree, where in the record is it that he's active at this? So there are two spots. First, there's an HR letter filed by a health source's HR department, and then later the accuracy of that letter is vouched for by the patent declaration. And the HR letter says that... Do you remember the R number for the HR letter? If you don't, don't worry about it. The HR letter says what? Just tell us. Basically, it says that Dr. Thress saw patients at HealthSource and he saw patients at Mercy Anderson. Those are the two places he saw patients. And if you look at the patent declaration, it says also that he obtained admitting privileges at Mercy. He obtained what? He obtained admitting privileges at Mercy. I think that's at... Do you take issue with your opposing counsel's statement on that point? I do take issue with that. I think that falls from two things. I think it's clear in the patent declaration that he obtained the admitting privileges. It makes that statement. But furthermore, it also attests... Can you help us? I think you're... It says, I'm reading this. Dr. Thress was required as part of his employment contract with HealthSource to obtain and maintain hospital privileges. Okay. Those are, as we understand it, the same thing. How do we know that? So if you look at the Mercy health medical staff bylaws, what it says is that they state that for associate staff with clinical privileges, the rights include regularly admitting patients without limitations. And the responsibilities... How do we know he's associate staff versus affiliate staff? Your friend argues he's affiliate staff. I mean, frankly, these arguments were not in the briefs. This specific argument was not in the briefs. I agree with that. That's a better argument. But just help me now that we're here. You know, I think... So I don't have the language in front of me dividing the privileges between associate and affiliate. My understanding is that... So associate staff with... So what's the distinction between associate staff and clinical staff? Associate members who have clinical privileges may regularly admit patients without limitation. Okay? Yeah. And then affiliate staff, it says, to qualify for an affiliate staff, a practitioner must meet the applicable general qualification set forth in a bylaw. An affiliate staff must hold an active or associate membership at the other hospitals. I'm sorry. And the affiliate staff shall consist of practitioners affiliated with the hospital who do not hold clinical privileges. So as I understand that, what that's saying is that, you know, Mercy Anderson is a network of hospitals. There are, you know, you could be an associate member at one of the hospitals and an affiliate member at another one in the network. But you're going to be an associate at one of them. And I think there's no dispute that... Go ahead. Sorry. I think that the only place that Dr. Thress saw patients was at Mercy Anderson. That's in the HR letter. So the HR letter is the key to the district court's findings is what you're saying. Again, you know, I wasn't prepared to have this in the weeds factual dispute here. But that is my understanding. And I'm happy to provide, you know, a further submission on this point after the argument if this court thinks that it boils down to that point. Why don't you go on and make the argument you expected to make? Well, I mean, I think the question in this case is whether Dr. Thress's participation here fell within, squarely within the example identified in 6.6. And for the reasons we explained in our brief, it did. Plaintiffs suggest that in their brief that the main argument in plaintiff's brief is that the problem is that the performance agreement didn't specifically, you know, provide admitting privileges. But that's not the question under the regulation. The regulation has three clear requirements. First, it says that call is a condition for obtaining admitting privileges. That's satisfied here. Mercy Anderson requires call as a condition of obtaining admitting privileges. Second, that the performance of on-call is only periodic. That's satisfied here. If you look at the performance agreement, it says that Dr. Thress performed on-call only periodically. And third, it says that admitting privileges must be a condition of employment at the health center. Admitting privileges generally, not at the specific hospital. And that was satisfied here. Health source required Dr. Thress as a condition, as part of his employment, to obtain admitting privileges. So those are the three requirements in the regulation. They're all satisfied here. In fact, I don't think Plaintiffs, I mean, so that, as we understand it, is case closed on the question of whether 6.6 is satisfied. Can I ask you a related to question, which is, doesn't the guidance say that you should list all locations and Mercy wasn't listed, right? It does. But the regulation, they distinguish between primary service locations and other activities and locations. And here, the primary service site was health source of Ohio, which was listed. And then other activities and locations are the sorts of hospitals where you're providing on-call or doing rounds. And those can be listed as hospitals, local hospitals. And that's what was done here. What about the fact that the guidance says nothing about on-call, just checking on patients? Couldn't that be their own patients? It could be their own patients. But under 6.6, the treatment of non-patients is covered when it complies with sort of the text of the regulation. And so here, I think, as I've explained, the text of the regulation is satisfied. So I don't think, you know, it extends, the deeming extends to both the provision of those services to patients and to non-patients when the specific example is satisfied, as it is here. If the court has no further questions, I urge the court to affirm. Thank you. All right, Mr. Flowers, you had three minutes or above. Thank you, Your Honors. Just to follow up on Judge DePauw's question about what CEO Patton said in her deposition, it was at page ID 625. She's talking about why this arrangement. What is the page ID? 625. Thank you. The question was, why was this agreement entered into between health source of Ohio and Mercy Anderson Hospital? The answer was, it was entered into for the coverage of the hospital floor for patient coverage because Mercy Anderson does not have an OBGYN residency program to cover the hospital, the OBGYN floor. It was not to squeeze within Section 6.6E42 that he was providing on-call coverage to obtain his admitting privileges. You agree you didn't make the affiliate staff argument in the brief? Yeah, that specifically, no. I kind of got into that answering a question, I think, from Judge White, and that happens. The more and more I go through these files, the more and more I see. But why isn't it forfeited then? Well, it isn't forfeited because it's raised here in front of you. No, you have to raise it in your brief. I mean, they got up and said, no, he never made that. You can't just come up with arguments on the fly in the government. Even if the court, even if a judge asks you a question, it seems to. You guys often come up with very good points, you know, that we hadn't thought of. And for the search for the truth, we should be looking at everything as long as there's a fair opportunity to respond, which we certainly had here. Did you raise it below with the district judge? It had to have been, that language had to have been addressed. The bylaws were definitely addressed. Well, but it was the affiliate staff argument raised with the district judge. Well, it never got to that because they never, the side of the burden of proof, never broke it down as to which one he was. Right, but you have an obligation to respond and say, no, that doesn't meet it, and here's why. Well, yeah, it seems like we're putting form over substance here, given that we haven't had the argument out. Maybe, but just the sandbag district judges. No, I mean, the judge cited those pages in his decision, but he just cites the two pages. He doesn't say which section he's under. So what are we supposed to do? I mean, I don't know what he's thinking. And I look at it and say, well, we're not sure if he's affiliated or not. Well, if you make the argument, it wouldn't be relevant. Yeah, well, you know, so what I said, I'm imploring the court to do the search for the truth. But let me point this out. First of all, the human resources letter. I don't know if I have the right one. There's a human resources letter attached to their motion to dismiss. It's dated August 11, 2020. It says nothing about admitting privileges of mercy interest. Nothing. It just talks about generally what Dr. Thresh was doing there. And if I could just stress in these final 16 seconds, there's a disconnect. The regulation requires that the on-call is to obtain the admitting privileges, to obtain them. It's required to obtain them. The fact that he has them or doesn't have them isn't enough. They have to be, the on-call has to be to obtain them. And there's no proof of that here, and there's never been here. Thank you, and I'd ask you to reverse. Just, you didn't address whether the exhaustion, whether your, do I understand correctly that as soon as this came up or at some point you sent the requisite notice, is that correct? Correct. And then after the time expired, you amended the complaint. Correct. We sent the notice early as soon as we found out that there was this federal angle to the department. We sent the claim in. That sat for almost three years. When we had the dismissal here, we had 60 days under the Westfall Act to refile, which we did. That's sitting there pending. That's what I was discussing with the judge at the bar earlier. I don't mean the state medical malpractice notice. I mean the exhaustion notice. Correct. So the claim would have been submitted, was submitted to DHS, was actually received September 24, 2010. Sorry, what? The claim was submitted to DHHS. It was received on September 24, 2020. It wasn't denied, and this isn't on the record because the case was underway, but until January 19 of 2023. So that's all set up. Okay. And then one other question. What is the practical difference, just out of curiosity? Are there, do you not get a jury trial? Are there limits on recovery? What's the difference between having the doctor as a defendant and having the state step in? Right. I mean the government step in. There's no jury trial. That's one thing. The bigger problem is that once you get into the Federal Tort Claims Act, there's a shorter two-year statute of limitations, under Ohio statute of limitations, and Bea would have had until she was 19 to file the claim, maybe longer. So all of a sudden you're hit with this two-year statute of limitation. There's the exhaustion requirement, which they're pressing. And what's maddening about this is that if we knew he was a federal employee, we would have done all that. Can I ask, but I thought you exhausted. You just said you exhausted. We have. We have. They're going to argue it. And you could argue tolling, right? Absolutely. And when the claim accrued. And we're going to fight about that. This is just the first step. But, yeah, there's so many pitfalls under the Federal Tort Claims Act that you can't know about if you don't know that is the hospital officer. It's his title, Mercy Anderson Hospital Officer. How is that federal? So, yeah, that's what we're dealing with, and it's happening more and more. Have you been through our settlement office? I don't know. Did we do that in this one? I have been to the settlement office, and successfully, but I don't think we did in this case. Thank you, Your Honors. We appreciate the argument you've given, and we'll consider the matter carefully.